|   |   |
|---|---|
| UNITED STATES DISTRICT COURT | |
| FOR THE NORTHERN DISTRICT OF CALIFORNIA | |
| OAKLAND DIVISION | |

| | |
|---|---|
| PROTECH DIAMOND TOOLS, INCORPORATION, a California Corporation, <br><br> Plaintiff, <br><br> vs. <br><br> DAVID LIAO, an individual, PROTECH DIAMOND TOOL INC., a Canadian Corporation, and PROTECH DIAMAND USA, INC., a California Corporation and DOES 1-10, <br><br> Defendants. | Case No: C 08-3684 SBA <br><br> **ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO DISMISS FIRST COUNTERCLAIM** <br><br> [Docket 29 and 34 ] |

The instant action involves a trademark dispute under the Lanham Act between Plaintiff Protech Diamond Tools Incorporation ("Plaintiff") and Defendants David Liao, Protech Diamond Tools Inc., and Protech Diamond USA, Inc. (collectively "Defendants").[1] Each side claims the right to use the "Protech" mark and variants thereof in connection with the marketing and sales of their respective products. The Court has original jurisdiction pursuant to 28 U.S.C. § 1331.

The parties are presently before the Court on Plaintiff's motion for preliminary injunction (Docket 34) and motion to dismiss Defendants' first counterclaim (Docket 29). Having read and considered the papers filed in connection with this matter, and being fully informed, the Court

---

[1] Protech Diamond, Inc., is not a named Defendant, but is a Counterclaimant, along with Protech Diamond Tools, Inc. and Protech Diamond USA, Inc. All of these entities are related to Defendant Liao. For simplicity, this Order refers to "Defendants" to include the Liao-related entities.

DENIES both motions for the reasons set forth below. The Court, in its discretion, finds these matters suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b).

## I. BACKGROUND

### A. FACTUAL SUMMARY

In 1998, Defendant David Liao ("Liao") and a business associate formed an Oregon corporation known as Protech Diamond, Inc. ("Protech Oregon"). (Liao Decl. ¶ 1.) The purpose of the business was to market and sell professional diamond-tip cutting tools designed by Liao, who is the President of the Company. (Id. ¶¶ 1, 3.) Since its formation, Protech Oregon has continuously marketed and sold its products in the United States. (Id. ¶ 4.)

Late in 1999, Liao moved to Canada, where he formed a new business known as Protech Diamond Tools, Inc. ("Protech Canada"), a Canadian corporation. (Id. ¶ 5.) Under Liao's direction, Protech Canada developed a product line of saw blades and diamond cutting tools for professional use. (Id. ¶ 6.) These products are manufactured in China through an exclusive production arrangement. (Id.) Protech Canada began marketing its products in the United States under the Protech name starting in late 2000. (Id. ¶ 7.)

In April 2000, Dennies Chung ("Chung") met with Liao at the Export Fair in China. (Id. ¶ 15.) At that time, Chung was an employee and co-owner of Dimensional Tools and Supply, which was a customer of Protech Canada. (Id. ¶¶ 16-17.) A few months later in July, Chung travelled to Canada where she met with Liao to discuss the possibility of developing a business relationship. (Id. ¶ 18.) Liao and Chung met again in December. (Id. ¶ 22.) Thereafter, from December 2000 to July 2001, Protech Canada provided Chung with a number of saw blades that were tested by various companies selected by Chung to determine their suitability for the professional market in Northern California. (Id. ¶ 23; Liao Decl. Ex. 35.)

By mid-2001, Liao and Chung reached an agreement to form a jointly-owned company to market and sell saw blades supplied by Protech Canada throughout the United States, on a non-exclusive basis. (Id. ¶ 24.) Chung knew about Protech Oregon, which already was distributing Protech Canada products, but indicated that she was not interested purchasing an ownership interest in the company. (Id. ¶ 25.) Under the proposed partnership agreement, Chung would own

**1** 70 percent while Liao would own 30 percent of the new company, with an option to purchase
**2** additional equity.  (Id. ¶ 27 and Ex. 37.)  The new San Leandro-based entity, Protech Diamond
**3** Tools Incorporation ("Protech San Leandro"), was incorporated in California on October 18, 2001.
**4** (Id.; Quintana Decl. ¶ 2.)  Later that same year, Protech San Leandro began distributing saw blades
**5** from Protech Canada under the Protech mark.  (Liao Decl. ¶ 29.)
**6**      On October 23, 2001, Chung sent Liao an exemplar of a Protech design logo, ostensibly for
**7** his approval.  (Id. ¶ 30.)  On the exemplar is a handwritten message that states:  "Suggest.  For
**8** Logo Only.  Not for big application."  (Id. Ex. 44.)  Believing that he had an ownership interest in
**9** Protech San Leandro, Liao did not object to Chung's request.  (Id. ¶ 31.)  Liao claims that it was
**10** not his intention to confer upon Chung any right to use the Protech mark on an exclusive basis.
**11** (Id. ¶ 32.)  Protech Canada subsequently filed a trademark application on June 3, 2002 with the
**12** Canadian Intellectual Property Office for the "Protech Diamond" mark, which was granted on
**13** February 4, 2004.  (Id. ¶ 34.)
**14**      In the meantime, on April 17, 2002, unbeknownst to Liao, Chung submitted an application
**15** to the United States Patent and Trademark Office ("PTO") to register the logo, which was
**16** essentially the same as the exemplar she previously sent to Liao.  The logo was accompanied by
**17** the text, "P Protech Diamond Tools Toll Free 1-888-618-2900."  (Hocking Decl. in Supp. of Mot.
**18** for Prelim. Inj. ("MPI Hocking Decl.") Ex. A.)  Chung submitted the trademark application in her
**19** name, as opposed to Protech San Leandro.  (Id.)  In her application, Chung identified the date of
**20** first use as September 1, 2001.  (Id.)  In addition, she allegedly submitted a declaration stating that
**21** she was unaware of any similar marks in use within the United States.  (Crossclaim ¶ 32a-b.)  The
**22** PTO approved Chung's application on April 15, 2003 under Registration No. 2,734,788 ("the '788
**23** mark").  (MPI Hocking Decl. Ex. A.)
**24**      Throughout  2002 and 2003, Protech Canada sold its products to customers in the United
**25** States through both Protech Oregon and Protech San Leandro, which were serving as non-
**26** exclusive distributors.  (Id. ¶¶ 4, 29.)  In October 2003, shortly after securing the '788 mark,
**27** Protech San Leandro began to market and sell (allegedly cheaper and inferior quality) saw blades
**28** from a supplier other than Protech Canada, but still using the Protech name.  (Liao Decl. ¶¶ 34, 36.)

1    Sometime in 2006, Plaintiff learned that several years earlier, Protech Canada had sought to
2  register the "Protech Diamond" mark (words only) with the PTO. (MPI Hocking Decl. Ex. C.)[2]
3  On or about April 4, 2006, Protech San Leandro sent Protech Canada a cease and desist letter
4  demanding that it refrain from using the names "Protech Diamond" or "Protech Diamond Tools."
5  (MPI Hocking Decl. ¶ 5 and Ex. D; Chung Decl. ¶ 11.) For the next several months, the parties
6  attempted to resolve their dispute over the use of the Protech name. (Id. ¶ 6.) After those
7  discussions failed, Protech Canada filed a Petition to Cancel the '788 mark before the Trademark
8  Trial and Appeal Board ("Trademark Board"). (Id. ¶ 7 and Ex. E.) Defendants eventually
9  withdrew their Petition to Cancel, which the Trademark Board accepted, and subsequently
10 dismissed the Petition with prejudice on August 20, 2008. (MPI Hocking Decl. Ex. I.)

   **B.    PROCEDURAL SUMMARY**

12   On August 1, 2008, Plaintiff filed the instant action against Defendants, claiming that it
13 owns and has the exclusive right to use the '788 mark, as well as the "Protech" and "Protech
14 Diamond Tools" marks, which are *not* registered with the PTO. The Complaint alleges four claims
15 for relief: (1) trademark infringement under 15 U.S.C. § 1114; (2) unfair competition and false
16 designation of origin in violation of 15 U.S.C. § 1125(a); (3) unfair competition in violation of
17 California Business & Professions Code § 17200, *et seq.*; and (4) unfair competition in violation of
18 California Business & Professions Code § 17500, *et seq.* (Docket 1.) On December 1, 2008,
19 Defendants answered the Complaint and filed two counterclaims, one for cancellation of trademark
20 and the other for declaratory relief. (Docket 24.)

21   Plaintiff has filed two motions that are now before the Court. First, Plaintiff seeks a
22 preliminary injunction to enjoin Defendants from using the marks "Protech," "Protech Diamond"
23 and "Protech Diamond Tools." Second, pursuant to Federal Rule of Civil Procedure 12(b)(6),
24 Plaintiff has filed a motion to dismiss Defendants' first counterclaim. Plaintiff's position is that

---

[2] It appears that the application was filed on June 10, 2002, but was abandoned as of June 20, 2003. (MPI Hocking Decl. Ex. C.)

Defendants cannot, as a matter of law, contest the validity of the '788 mark because it is now "uncontestable." The Court addresses these motions in turn.[3]

## II.   PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

### A.   LEGAL STANDARD

There are two tests applicable to a preliminary injunction. "Under the 'traditional' criteria, a plaintiff must show (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases). Alternatively, a court may grant the injunction if the plaintiff demonstrates either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor." See Natural Res. Def. Council, Inc. v. Winter, 518 F.3d 658, 677 (9th Cir. 2008) (citation and internal quotations omitted). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. They are not separate tests but rather outer reaches of a single continuum." In re Excel Innovations, Inc., 502 F.3d 1086, 1092 (9th Cir. 2007). "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (emphasis in original).

### B.   LIKELIHOOD OF SUCCESS ON THE MERITS

#### 1.   Prior Use of the Mark

Plaintiff predicates its preliminary injunction motion solely on its claim for trademark infringement under the Lanham Act. (Mot. at 6-10.) To prevail on that claim, Plaintiff must show that: (1) it has a valid, protectable trademark, and (2) Defendants' use of the mark is likely to cause confusion. See Applied Info. Sciences Corp. v. eBAY, Inc., 511 F.3d 966, 969-970 (9th Cir.

---

[3] Both sides have filed objections to certain aspects of the declarations and exhibits submitted in connection with the pending motions. Though some portions of the disputed submissions are mentioned in the Background section of this Order, they are presented solely for context and none form the basis of the Court's resolution of the pending motions. Therefore, the objections are overruled as moot.

2007).  As to the first prong, it is undisputed that *one* of Plaintiff's marks, i.e., the '788 mark, is registered with the PTO.  (MPI Hocking Decl. Ex. A.)  As such, Plaintiff has presented *prima facie* evidence that it owns a valid and protectable mark.  See 11 U.S.C. § 1115(a); Brookfield Comms., Inc. v. West Coast Enter., 174 F.3d 1036, 1047 (9th Cir. 1999).  As to the second prong, Defendants do not dispute that the parties' common use of "Protech" is likely to result in confusion.

The centerpiece of Defendants' opposition is its contention that Plaintiff cannot show a strong probability of success on the merits because *their use* of the Protech mark occurred *prior* to Plaintiff's use.  (Opp'n at 11-12.)  To prevail on that defense, Defendants must overcome the incontestability of the '788 mark.  The Lanham Act grants an "incontestable" right to use a registered trademark to the registered holder of that mark, so long as that registered holder has used the mark continuously for the five years immediately following registration.  See 15 U.S.C. § 1065.  Plaintiff registered the '788 mark in 2003, and has used it continuously since then.  Thus, in order to defeat Plaintiff's incontestable right to use the trademark, Defendants must establish that it used the Protech mark *prior to* Plaintiff's registration and has continued to use that name until the time of suit.  See id.; Watec Co., Ltd. v. Liu, 403 F.3d 645, 652 (9th Cir. 2005); Casual Corner Assoc., Inc. v. Casual Corner Stores of Nev., Inc., 493 F.2d 709, 712 (9th Cir. 1974).

To determine whether there has been prior "use in commerce" for the purposes of trademark protection, the Court looks to the "totality of the circumstances."  See Chance v. Pac-Tel Teletrac Inc., 242 F.3d 1151, 1159 (9th Cir. 2001).  In Chance, the Ninth Circuit offered the following guidance:

> [T]he district courts should be guided in their consideration of non-sales activities by factors we have discussed, such as the genuineness and commercial character of the activity, the determination of whether the mark was sufficiently public to identify or distinguish the marked service in an appropriate segment of the public mind as those of the holder of the mark, the scope of the non-sales activity relative to what would be a commercially reasonable attempt to market the service, the degree of ongoing activity of the holder to conduct the business using the mark, the amount of business transacted, and other similar factors which might distinguish whether a service has actually been "rendered in commerce."

**1**  Id. at 1159.  "While the first use need not be extensive, the use must be bona fide and commercial
**2**  in character[.]"  Department of Parks and Recreation for State of Cal. v. Bazaar Del Mundo Inc.,
**3**  448 F.3d 1118, 1126 (9th Cir. 2006) ("Bazaar Del Mundo").  And while advertising, standing
**4**  alone, may not establish priority of use, "advertising combined with other non-sales activity, under
**5**  [the] 'totality of the circumstances test,' … can constitute prior use in commerce."  Id.
**6**          Applying the above standard, the Court finds that Defendants have made a *prima facie*
**7**  showing that they used the Protech mark *prior* to Plaintiff's trademark registration in 2003.  The
**8**  record supports Defendants' contention that it has continuously marketed and sold saw blade
**9**  products using the Protech name since as early as 1998, well before the '788 mark was registered.
**10**  (Liao Decl. ¶ 4, 7, 8, 12.)   Notably, Plaintiff does not dispute that Defendants' use of the Protech
**11**  mark *predates* its own use of the mark.  Instead, Plaintiff attempts to minimize the significance of
**12**  Defendants' evidence as showing nothing more than "a few isolated sales" along with some
**13**  marketing activity.  (Reply at 7.)   Plaintiff's argument overlooks that under Ninth Circuit
**14**  authority, even a "*single* sale or shipment" of a product bearing a mark may be sufficient to show
**15**  use in commerce, provided that the transaction is bona fide and there are subsequent activities
**16**  evidencing "a continuing effort or intent to continue such use and place the product on the market
**17**  on a commercial scale within a time demonstrated to be reasonable in the particular trade."
**18**  Chance, 242 F.3d at 1157 (citing Hydro-Dynamics, Inc. v. George Putnam & Co., 811 F.2d 1470,
**19**  1472-74 (Fed. Cir. 1987)) (emphasis added).
**20**          Moreover, the Court disagrees with Plaintiff's characterization of the evidence presented.
**21**  Defendants have proffered copies of sales invoices and sales-related documentation evidencing that
**22**  since 1998 to the present, Defendants have been selling diamond cutting tools to a variety of
**23**  customers located in the United States.  (Liao Decl. Exs. 2-6, 8-18, 31, 33.)  Defendants also have
**24**  provided documentation regarding their sales and marketing efforts, letters to prospective
**25**  customers, marketing brochures, catalogs and pricing sheets, all bearing the Protech name.  (Id.
**26**  Exs. 19, 20, 22, 23, 24, 30, 34, 36-43, 49, 53.)  To further its commercial efforts, Defendants also
**27**  have attended a number of trade shows using the Protech name.  (Id. ¶ 12.)  These activities
**28**  demonstrate "a continuing effort or intent to continue such use and place the product on the market

on a commercial scale within a time demonstrated to be reasonable in the particular trade." Chance, 448 F.3d at 1126.[4]

The legal authorities presented by Plaintiff in its reply are readily distinguishable. Plaintiff first cites Chance, where the Ninth Circuit held that in a case involving no sales, plaintiff's mailing of 35,000 promotional postcards and receipt of 128 calls to its toll-free number were insufficient to establish "first use" in commerce. (Pl.'s Reply at 7.) In reaching that conclusion, the court acknowledged that the mailing was "evidence of commercial intent when it was mailed," but found that there was no evidence to establish a continuing use thereafter. Id. at 1160. In contrast, the Defendants in this case have proffered evidence of actual sales and ongoing use of the Protech mark in selling their products and in their marketing efforts. Thus, unlike Chance, there *is* evidence to support Defendants' claim of prior and continuous use.

Plaintiff's citation to New West Corp. v. NYM Co. of Calif., Inc., 595 F.2d 1194 (9th Cir. 1979) fares no better. In New West Corp., the court found that the defendant had sufficiently established priority of use where 430,000 copies of magazine were circulated and 13,500 subscriptions were received. Id. at 1200. Other than citing New West Corp., Plaintiff never explains the import of that decision or how it purportedly applies to this case. (Reply at 8.) To the extent that Plaintiff is attempting to suggest that Defendants must demonstrate a threshold sales volume in order to establish prior use, such an argument fails under Chance, which recognizes that even a single sale, coupled with subsequent commercial activities, may be sufficient. See Chance, 242 F.3d at 1157.

Finally, Plaintiff relies on ConsumerInfo.com, Inc. v. Money Management Int'l, Inc., 2008 WL 4183928 (C.D. Cal. 2009), where the district court granted plaintiff's motion for summary judgment on its trademark infringement claim. (Reply at 8.) In reaching its decision, the court found that the defendant had failed to substantiate its claim of prior use. Id. at *5. Although the

---

[4] Along with its reply, Plaintiff submitted the declarations of several individuals who work in the diamond tool cutting industry and claim that they had never heard of Liao or Protech Canada until Protech San Leandro was formed in 2001. (Hayden Decl. ¶ 4; Ferras Decl. ¶ 3; Pico Decl. ¶ 4.) Setting aside the fact that Plaintiff is presenting a new argument and evidence in its Reply, which this Court does not countenance, these submissions do not, as Plaintiff suggests, demonstrate that Defendants was not using the Protech name in commerce prior to 2001.

defendant alleged it generated thousands of promotional brochures, the declarations submitted showed only that 3,000 brochures were sent to another branch office and did not reach the public. Id.  Again, this case presents an entirely different scenario based on the presentation of evidence showing Defendants' continuous sales and promotional activities using the Protech mark, prior to Plaintiff's alleged first use of the mark.

Based on the record presented, the Court concludes that Plaintiff has shown a possible – but not a strong – likelihood of success.  Although the '788 mark is presumptively valid and uncontestable, Defendants have presented evidence showing that Plaintiff's mark may, in fact, be invalid and/or limited in scope as a result of their use of the Protech name, which preceded the date of the Plaintiff's trademark registration.  As such, the question now becomes whether Plaintiff has met its burden of showing that it will suffer irreparable harm absent a preliminary injunction.[5]

### C.  IRREPARABLE INJURY

"Irreparable injury is ordinarily presumed upon a showing of a likelihood of success." Abercrombie & Fitch Co. v. Moose Creek, Inc., 486 F.3d 629, 633 (9th Cir. 2007).  Since Plaintiff has not demonstrated a strong likelihood of success at this juncture, it is questionable whether it is entitled to that presumption.  But assuming *arguendo* that the presumption applies here, Plaintiff's undue delay in filing its preliminary injunction motion rebuts its assertion of irreparable injury. "'[T]he basic function of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits.' … Where no new harm is imminent, and where no compelling reason is apparent, the district court was not required to issue a preliminary injunction against a practice which has continued unchallenged for several years." Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc., 762 F.2d 1374, 1377 (9th Cir. 1985); e.g., Miller for and on Behalf of

---

[5] Citing Sengoku Works Ltd. v. RMC Int'l Ltd., 96 F.3d 1217, 1220 (9th Cir 1996), Defendants separately argue that as a manufacturer, Protech Canada is entitled to a presumption of ownership of the Protech mark.  (Opp'n at 15.)  Though Plaintiff does not respond to this argument in its reply, the Court notes that Sengoku did not involve the situation presented herein, where the trademark in dispute has been deemed "uncontestable" by operation of law.  With regard to Defendants' laches argument (Opp'n at 19-20), it is more appropriately addressed in the context of irreparable harm.  Finally, Defendants' fraud argument (id. at 16-18) is largely duplicative of the argument presented in its opposition to Plaintiff's motion to dismiss, and therefore, is discussed in the section of this Order addressing that motion.

1  N.L.R.B. v. California Pac. Med. Ctr., 991 F.2d 536 (9th Cir. 2001) (noting that a "long delay
2  before seeking a preliminary injunction implies a lack of urgency and irreparable harm.")  (citation
3  and internal quotations omitted); Richard Feiner & Co. v. Turner Entertainment Co., 98 F.3d 33, 34
4  (2d Cir. 1996) ("The presumption may be rebutted, if the defendant is able to demonstrate that the
5  plaintiff delayed in bringing an action requesting preliminary injunctive relief.").  Indeed, undue
6  delay, standing alone, constitutes grounds for rejecting a motion for preliminary injunction.  See
7  Oakland Tribune, Inc., 762 F.2d at 1378 (affirming denial preliminary injunction based on delay
8  alone, without assessing the likelihood of success on the merits).
9       Here, Plaintiff readily acknowledges that it has known of Defendants' alleged infringement
10 since 2006, but did not file its Complaint until August 1, 2008, and then waited until January 20,
11 2009 to file its motion for preliminary injunction.  (Compl. ¶ 10; Reply at 11; Hocking Decl. Ex.
12 D.)  Nonetheless, Plaintiff asserts that its almost three-year delay is excusable because it had no
13 reason to sue until 2008, when Defendants withdrew their Petition to Cancel the '788 mark which
14 then was pending before from the Trademark Board.  (Reply at 11; MPI Hocking Decl. Exs. E, I.)
15 Plaintiff's explanation is unavailing.  The decision by Defendants not to pursue their Petition to
16 Cancel the '788 mark does not obviate the fact that the allegedly infringing conduct has been
17 occurring continually and without interruption for years, without any legal action being taken by
18 Plaintiff.[6]  That delay alone is sufficient to undermine Plaintiff's claim of immediate, irreparable
19 harm.  See High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc., 49 F.3d 1551, 1557
20 (Fed. Cir. 1995) ("Absent a good explanation, not offered or found here, 17 months is a substantial
21 period of delay that militates against the issuance of a preliminary injunction by demonstrating that
22 there is no apparent urgency to the request for injunctive relief."); Gidatex, S.R.L. v. Campaniello

---

24  [6] Plaintiff also suggests that it had no reason to sue until Defendants opened an office in California in the Summer of 2008.  (Reply at 11.)  That development is beside the point.  As noted,
25  Plaintiff admittedly knew about Defendants' alleged infringement in 2006.  (MPI Hocking Decl. Ex. D.)  As such, it was incumbent upon Plaintiff to act promptly to protect its trademark rights.
26  "[A] plaintiff cannot sit on the knowledge that another company is using its trademark, and then later come forward and seek to enforce its rights."  Internet Specialties West, Inc. v. Milon-
27  DiGiorgio Enters., 559 F.3d 985, 990 (9th Cir. 2009).
28

1  Imports, Ltd., 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998) ("courts typically decline to grant
2  preliminary injunctions in the face of unexplained delays of more than two months"); Richard
3  Feiner & Co. v. Turner Entertainment Co., 98 F.3d 33, 35 (2d Cir. 1996) (holding that plaintiff's
4  inaction after awareness of copyright infringement undermined the claim that "any further delay
5  will cause irreversible harm.").

6      **D.    BALANCE OF HARDSHIPS**

7      Plaintiff offers little substantive argument concerning the balance of hardships, and simply
8  repeats its contention that the public is confused over which entities are selling "authentic" Protech
9  products. (Mot. at 12.) Of course, that argument cuts both ways, since such confusion also inures
10 to the detriment of Defendants to the extent that it is determined that they have exclusive right to
11 use the mark.

12     Plaintiff also contends that the balance of hardships tips sharply in its favor because "one
13 customer believed Protech to be the supplier of its construction blades when in fact it had been
14 Defendants." (Mot. at 12; Chung Decl. ¶ 13.) While evidence of actual confusion may be germane
15 to Plaintiff's showing on the merits of is trademark claim, it is unclear how evidence that a single
16 customer was confused tips the balance of hardship *sharply* in its favor. The Court thus concludes
17 that the balance of hardships tips in neither side's favor.

18     **E.    SUMMARY**

19     Plaintiff has not made the requisite "clear showing" that a preliminary injunction is
20 warranted. See Mazurek, 520 U.S. at 972. At this juncture, the likelihood of success as to
21 Plaintiff's trademark infringement claim appears questionable in light of the evidence showing
22 Defendants' use of the Protech mark well before the date of Plaintiff's first use of the '788 mark.
23 Perhaps more fundamentally, Plaintiff has failed to provide the Court with any objectively
24 reasonable explanation for waiting almost three years after becoming aware of Defendants' alleged
25 infringing activities to bring the instant motion. That delay, standing alone, militates in favor of
26 denying the motion. Nor has Plaintiff convinced the Court that the balance of hardships tips
27 sharply, or otherwise, in its favor. For these reasons, Plaintiff's motion for preliminary injunction
28 is DENIED.

**III.   PLAINTIFF'S MOTION TO DISMISS FIRST COUNTERCLAIM**

   **A.   OVERVIEW**

Defendants have filed two counterclaims against Plaintiff for:  (1) Cancellation of Federal Trademark; and (2) Declaratory Relief.  (Docket 24.)  Pursuant to Rule 12(b)(6), Plaintiff has filed a motion to dismiss the first counterclaim in which Defendants seek an order cancelling the '788 trademark registration.   Specifically, Plaintiff contends that Defendants' first counterclaim fails, as a matter of law, on the ground that the mark is "uncontestable" under the Lanham Act.

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.   To survive a motion to dismiss for failure to state a claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."   Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "Specific facts are not necessary; the statement need only give the defendant[s] fair notice of what ... the claim is and the grounds upon which it rests."  Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (internal quotation marks omitted); Johnson v. Riverside Healthcare Sys., LP, 534 F.3d 1116, 1122 (9th Cir. 2008).  "In general, the inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff."  Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008).

   **B.   CONTENTIONS**

Plaintiff first posits that Defendants have no right to seek the cancellation of the '788 mark based on prior use. (Mot. at 7.)  Relying on Sovereign Order of Saint John of Jerusalem, Inc. v. Grady, 119 F.3d 1236 (6th Cir. 1997) ("Grady"), Plaintiff contends that a trademark becomes "uncontestable" five years after registration,  and thereafter a third party can no longer challenge the validity of the mark.  (Id.)  Grady does not stand for that proposition.  Rather, the court simply recognized that "[o]nce incontestability is established, only those eight defenses enumerated in [section] 1115(b) can be interposed in an action for trademark infringement."  Id. at 1240.[7]  The

---

[7] Section 1115(b) was amended in 1998 to add another ground for cancellation of an uncontestable trademark.

1  court of appeal agreed with the district court that none of the defenses asserted by the defendant
2  fell within the scope of any of the enumerated defenses.  Id.
3       Unlike Grady, Defendants' counterclaim is grounded on the theory that Plaintiff procured
4  the registration through fraud.  (See Counterclaim ¶¶ 32, 49.)  Fraud is one of the enumerated
5  grounds for challenging an uncontestable mark.  See 15 U.S.C. § 1115(b)(1).  To state a claim for
6  cancellation of a trademark for fraud, the claimant must allege that (1) there was a "deliberate
7  attempt to mislead" the PTO and (2) that the misrepresentations were "material," i.e., they would
8  have affected the PTO's action on the trademark application.  See Orient Exp. Trading Co., Ltd. v.
9  Federated Dept. Stores, Inc., 842 F.2d 650 (2d Cir. 1988) (affirming invalidation of 19 trademarks
10 where the registrant's date of first use was "greatly exaggerated"); Angel Flight of Ga., Inc. v.
11 Angel Flight Am., Inc., 522 F.3d 1200, 1209-210 (11th Cir. 2008) ("Fraud occurs when an
12 applicant knowingly makes false, material representations of fact in connection with an application
13 for a registered mark.").
14      Plaintiff contends that "[t]he only way an allegation of first use could be 'fraudulent' is if
15 an applicant did not in fact use the mark on the date stated in the application, or did not use the
16 mark on the goods stated in the application."  (Mot. at 9.)  That is incorrect.  "Purposely failing to
17 disclose other users' rights to use the same or similar marks may qualify as a material omission
18 justifying cancellation of a trademark."  Angel Flight of Georgia, Inc., 522 F.3d at 1210 (upholding
19 cancellation of a trademark where the registrant was aware, but failed to disclose to the PTO, that
20 other organizations were using the same or similar mark).  In this case, Defendants have alleged,
21 *inter alia*, that Plaintiff filed its trademark application despite being "fully aware" that the mark
22 was already being used by Defendants.  (Counterclaim ¶¶ 19, 20, 32a.)  In addition, they allege that
23 Plaintiff signed a declaration stating that it was not aware of any similar marks in use within the
24 United States when, in fact, Plaintiff was well aware that the contrary was true.  (Id. ¶ 32b.)
25 Plaintiff responds that its owner, Chung, "did not lie," and at most, she simply made a mistake in
26 her trademark application.  (Reply at 7-8.)  However, at the motion to dismiss stage, the Court
27 cannot resolve factual disputes and must accept the allegations in the counterclaim as true.  See
28 Russell v. Landrieu, 621 F.2d 1037, 1042 (9th Cir. 1980) ("[courts] must resolve all factual

disputes in favor of the plaintiffs in a motion to dismiss under Fed.R.Civ.P. 12(b)(6)."). Accordingly, Defendants' allegations are sufficient to survive Plaintiff's motion to dismiss.

Plaintiff also argues that Defendants are precluded from seeking the cancellation of the '788 mark given their prior decision to abandon their Petition to Cancel before the Trademark Board. (Mot. at 9.) This issue is not properly before the Court. In its moving papers, Plaintiff failed to cite any authority to support this contention. Yet, in its reply brief, Plaintiff cites, for the first time, a number of cases, in addition to expanding the legal basis of its argument to frame it in terms of estoppel. (Reply at 11.)  As a matter of fairness, the Court does not consider arguments raised for the first time in a reply.  See Eberle v. City of Anaheim, 901 F.2d 814, 818 (9th Cir. 1990).  However, Plaintiff is not precluded from presenting this argument at a later time in a properly presented motion, provided that there is a good faith factual and legal basis for doing so.[8] Plaintiff's motion to dismiss Defendants' first counterclaim is DENIED.

## IV. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1. Plaintiff's motion for a preliminary injunction (Docket 34) is DENIED.

2. Plaintiff's motion to dismiss Defendants' first counterclaim (Docket 29) is DENIED.

3. The motion hearing date and Case Management Conference scheduled for June 9, 2009 are VACATED. The Case Management Conference is now scheduled for **July 8, 2009 at 3:15 p.m.** The parties shall *meet and confer* prior to the conference and shall prepare a joint Case Management Conference Statement which shall be filed no later than ten (10) days prior to the Case Management Conference that complies with the Standing Order for All Judges of the Northern District of California and the Standing Order of this Court. Plaintiff shall be responsible

---

[8] It is evident that the parties have expended considerable time and resources in connection with the submission of the *voluminous* papers filed in connection with the foregoing motions. Given their prior efforts to resolve their dispute informally, the parties are well advised to consider resuming such discussions. If the parties so request, the Court will refer this case to a Magistrate Judge for an early settlement conference.

1 | for filing the statement as well as for arranging the conference call.  All parties shall be on the line
2 | and shall call (510) 637-3559 at the above indicated date and time.
3 |     IT IS SO ORDERED.
4 |
5 | Dated:  June 5, 2009
6 |                                     Hon. Saundra Brown Armstrong
                                    United States District Judge